Mr. Valenzuela, good morning Your Honor, and please the court. My name is Maureen Valenzuela on behalf of the petitioner, Elmer Hernandez-Martinez. I would like to reserve your attention for two minutes. This case involves a citizen of El Salvador that was denied withholding the Convention against Torture Relief or TAP. He was also denied a motion to remand to the evidence. That's the issue I want to start with. Counsel, help me on something that was on my mind. Something about this guy makes him a cop magnet. I don't know where it is, but it was true where it came from. It's true in the U.S. They always seem to fasten on to him. However, the issue is in this case everybody asks him to pull up his shirt to look for gang tattoos. The gangs do, the police do. He doesn't have any gang tattoos, so they conclude he's not in a gang. And maybe they knock him in the stomach with the butt of a rifle or something, but basically they don't do much to him on account of it. So where's the persecution part of the torture? That is a form of persecution, Your Honor. He did get a butt hit in the stomach. Well, it seems like it's more like the opposite. We are going to make you wish you hadn't been born if you're a member of a gang. Well, you're not. Okay, bye. The result to that would be leave him alone, but the fact is he does get persecuted each and every time he goes into the city. He gets persecuted and they hit him with a rifle in the stomach. He was injured. He was injured for two months with pain. So that, in my opinion, that is a form of persecution. We've had a lot of cases where we say it doesn't rise to the level. That's the phrasing usually used. And cops sort of roughing a guy up, that's a lot of those doesn't rise to the level cases. I believe the country conditions in this case do indicate that it rises to that. In fact, the country conditions point to cops targeting gang members because they have tattoos. And that continues to go on. They restrict the freedom. They stop them. Sometimes they hit them. And they threaten to kill them in this case. They threaten to kill them and leave them out there for the vultures. So I think those facts do bring it to a persecution level. But the point I was going to get to, the remand was a key part of this case. It was denied and the judge denied it because he indicated that we didn't meet the heavy burden. Well, the heavy burden in the Chin case that the judge cited is, one, new facts. The new facts here were, two days after his merits hearing, that President El Salvador came on 60 Minutes and said he cannot protect the citizens. There's two governments, in fact the government and the gangs, the security forces the gangs have, and they collect taxes. Those things go to the merits of his argument for his claims. It doesn't get any better than that, than the President of the country saying that he can't protect the citizens. These cases are uphill battles, up-mountain battles. But when you have the President of El Salvador saying that he can't protect the citizens, that information on his face is critical. So I believe it was an error for the Board of Immigration Appeals to deny remand in that case. There are failed states all over the world that can't protect their citizens. Is everybody that lives in one entitled to asylum in the U.S.? Maybe not, maybe so. It depends on the facts of each case. In this case, the comments by the President actually touched on the points that needed to be made to get the requisite relief before being kept. For example, relocation. If the government of El Salvador can't protect the citizens, there's a presumption that shifts in the government that they have to rebut that there is no ability to relocate. So if that evidence would have came in, that presumption would have shifted to the government to rebut that. So that didn't take place because that evidence was denied. So I believe there was a reversible error when the judge did not allow the evidence of the 60 Minutes interview to be presented by denying the remand. In terms of particular social groups, the particular social group in terms of the police targeting gang members, that's supported by the record. It's supported by the country conditions. It's isolated. I thought the evidence was targeting young men, but he's 52. It's targeting men. It may refer to young men, but it's targeting what they suspect to be gang members. And that's what he was suspected of being, a gang member. And unfortunately, like your Honor said, it happens here and it happens in El Salvador. He's had that trouble. And each event from 1999 to 2008, 15, 16, 17 days, he's been deported and returned to the United States as being because of his fear of the gangs. And also, the last three years were because the police were targeting him each time he stopped and targeted him. So I believe that we show through the country conditions, the societal concerns, social distinction in terms of how he's perceived, in terms of particularity, the same report, country conditions, target men that are suspected of being gang members. And that's what he was targeted as. There's a second particular social group I want to focus on. Landowner. He's a family member of a landowner. Family is a social group that the matter at LEA has recognized. Landowners, that is a little bit iffy, but I think Cordoba, the court will return that. Now that specific group, there's also an alternative finding of lack of nexus, isn't there? There is. In this case, I suggest there is a nexus, Your Honor. In the area where he lived, there was 800 to 900 population. Out of that population, only about eight or nine people had land. So there was less than 1% of the people had land. They knew that his mom owned that land. They knew that there was also mixed motives. He was sending money to her, and they knew that he was sending money to her. And he testified to that, and he was found credible under the Real ID Act, assessing all these evidence. So I think we satisfied that particular social group in terms of family. And as a result of his testimony, he indicated that he was targeted because of money that he paid his mom and also because of the land that she owned. And the judge at the end of the hearing asked him that question, and I hadn't clarified it because they kind of cut him off, and he completed it. It was because of the land as well. So I believe a particular social group in terms of the family and land was also satisfied before the immigration court. But even if those issues were at issue, the evidence of the President of El Salvador and those transcripts would have further helped those particular social groups. How does that work? I mean, if the groups lack particularity and social distinction, what in the President's statement would contribute to that? Well, when he says that the government, I mean, the de facto gang members in MS-13 are a de facto government, and they collect taxes, and they control boundaries, that goes to how society perceives them. So I think that...  But how does that relate to the perception of the groups you were describing? The family? Yeah. I think it goes to how they, the extortion attempts, that's a form of what they call collecting taxes, and it goes to that issue. We didn't get to further explore that because we didn't get that evidence in the record. Take my hands right now. Okay. You can reserve. Ms. Perry. May it please the Court, Rosie Ampario on behalf of the Attorney General. Substantial evidence supports the agency's denial of petitioner's application for withholding a removal and cat protection. First, with regard to petitioner's proposed social group, a family member of a landowner targeted by gang members for extortion and animal recruitment demands, the group is not socially distinct. There was no shown with testimony or documentary evidence that family members of landowners who refused to give in to extortion or recruitment demands are perceived differently by Salvadoran society. Based on petitioner's testimony, the gang sought him because they believed that he had money, as he spent money to his mother. Petitioner's evidence pertains to the gang member's perception of his proposed particular social group, not society's perception. The group also isn't particular. Petitioner failed to indicate what targeted means and whether people in his community would know who is a Salvadoran family member of a landowner targeted by gang members for extortion and animal recruitment demands. Family member could refer to immediate family or distant family. Landowner could include individuals from various backgrounds, such as individuals who own small property or large estates. Petitioner testified that he heard if someone in El Salvador owned a home or businesses or had money, the gang will demand that the person pay them rent, and if the person does not comply, they would be killed. This testimony establishes that anyone could be targeted, and that Salvadoran society does not distinguish the social group. That is a find. I'm going to ask you a question about nexus, because the BIA sort of treated the IJ's ruling as making a clear across-the-board nexus finding, but the IJ's ruling is actually kind of scattershot. It's got a comment on nexus here and a comment on nexus there, and different points in the opinion, and it's not clear that there's a nexus finding as to each social group in the IJ's order. So I'm just wondering if we have a disparity between the two orders, and what follows from that. Well, he made an overall nexus determination. It's not he didn't specifically make a nexus determination with regard to each of them, but overall he made a nexus determination, and the board in any case, the petitioner has waived any nexus determination in this case, or argued with regard to any nexus determination. So I would say that the IJ did make a nexus determination with regard to these two social groups. Going back to the particular social groups, the petitioner did not sufficiently argue particularity. He failed to address the board's particularity finding in his opening brief, therefore he has waived the issue. Regarding the social group of Salvadoran men that police unlawfully target as suspected gang members, there was notice shown that it was particular. The term unlawfully is subjective. It is unclear what constitutes a suspected gang member, and he did not address the particularity of the group before the board, therefore he did not exhaust the issue. Like I said, with regard to the nexus issue, he waived that issue in his opening brief before the court. I mean, that would essentially mean that they sort of forfeited the whole case right out of the box, because the nexus sustains the whole order below, and your view is they didn't challenge nexus at all, it's all gone, and the point of all their words in the brief was irrelevant. Is that a reasonable way to read the brief? It's not, when it raises these particular social group issues, it's not challenging also the nexus finding. Well, he challenges the social distinction in the part, well, he doesn't really challenge particularity. In the sense that that's why, I mean, that's implicit in the argument. I'm just, I'm questioning the premise of the waiver argument, that they filed a brief that was dead on arrival. It would appear so, Your Honor, that he did, as he did waive it. He didn't address it. There's no clear argument with regard to nexus in the brief. It looks like he fears random violence. He testified that the gang lifted his shirt to see if he had tattoos, but they never physically harmed him, and he was always able to escape. His testimony reveals that the harassment he encountered was motivated by theft and financial gain, because the gang sought him due to their belief that he had money. Also, there's no nexus to the proposed group of Salvadoran men that police unlawfully target and suspected gang members. There's no evidence presented showing that the police unlawfully targeted him because he was a suspected gang member. With regard to CAD, or the Convention Against Torture, Petitioner was not tortured in the past. He was hit three times in the stomach and kicked on one occasion, and he was hit on his knee every time the police saw him, but he didn't suffer any injuries. He acknowledged that he did not go to the doctor either. There's no showing with regard to the gang treatment. The gang lifted his shirt to look for tattoos of rival gangs, but he was never physically harmed. And there's no showing that he will be tortured in the future. The mistreatment that he encountered in the past did not escalate beyond a hit on the knee  No evidence was presented to show that he will endure any pain or suffering more severe than what he experienced previously. Well, he didn't show that it was related to his case, that there was any relation to his case here. He didn't show a particularized risk of torture by these individuals, or that the country conditions reports would make any difference in his case. Yeah, so I just don't believe that he made any difference, it wouldn't make any difference in his case. With regard to the gang mistreatment and future torture, there's no showing that the harm he would endure would be with the acquiescence of the Salvadoran government. He never filed a police report regarding the incidents with the gang. If there are no further questions, the government would respectfully request that the court deny the petition for a re-meeting. Thank you, counsel. Mr. Palazzo. In terms of the CAT claims, country conditions were presented, and there was reference to the country conditions that he would suffer torture based on the country conditions human rights report that was presented in the record. You know, the issue, and the issue... But that showed that people get tortured, but it didn't show anything about this fellow being likely to be tortured. Well, he testified that they threatened to kill him, and he was previously persecuted. It may not raise the level of torture at that point, but the country conditions suggest that they would be the case and be returned. I would also say that not having the correct information from the testimony of the full testimony or a full interview of the president, it hurts. We had that full testimony. We got transcripts. We just weren't able to present it. We would have additional information as to that torture against him. This is the Senate review. It's de novo on the questions of all particular torture groups. This court reviewed it de novo, and I also believe that remand could be reviewed de novo and ask the court to review that and allow that testimony in and remand the case. Thank you. Thank you very much. Thank you both, counsel. Any other hopeful arguments this morning on the case to submit?
judges: KLEINFELD, MILLER, COLLINS